May it please the Court, Your Honor. James Kuhn again on behalf of the Plaintiff Debra Leedy. This is a case in which we raise three legal errors. The first, that while the ALJ properly found that the Plaintiff suffers from severe anxiety and depression, he said nothing about that in his dispositive hypothetical question to the vocational expert. Didn't mention any kind of mental limitations. As I'm sure the Court is aware, a vocational expert's opinion cannot be the basis for a finding of non-disability if it does not include all of the claimants' impairments. Well, the hypothetical said what? The hypothetical said it gave some physical impairments. Orthopedic impairments, low back and neck I believe. Just didn't say anything. Not even, you know, and she needs a low-stress job. That's what the government argues. Well, yeah, but he talked about a low-stress job in his decision, which is right. He mentioned low stress in the decision. However... Well, the stress has to do with a mental... I guess that's what... that is referring to some... a mental problem. It would, that's true. The problem is that language, low stress, or anything like that does not appear in the question to the vocational expert when the ALJ is saying, are there any jobs she can do? Without that, the vocational expert's opinion... Well, I don't think there's anything wrong with my hearing. Maybe there is, but I don't pick up a lot of what you're saying. Oh, I'm sorry, I'm backing too far off the microphone. Maybe it's the acoustics in this room. It's a pretty room, but sound isn't the best necessarily. In short summary, I'm saying that the ALJ found this is a claimant with severe mental problems, depression and anxiety, but his hypothetical question to the vocational expert included no such limitations, no limitations of any kind mentally, included only orthopedics. Number two, there are two doctors in this case, two treating doctors for her mental condition. Both of them gave opinions that amount to assertions that she can't work. Dr. Johnson said she was not in any way ready to deal with a job where she has to perform during certain hours and at a certain level. And Dr. Stallone said at the time she began therapy, she would have been unable to cope with even any kind of work environment. What the ALJ did with those opinions was to quote substantially from both these doctors' opinions in other respects, but to ignore this language. Just left it out. The district court said, well, the judge gave sufficient reasons for rejecting these opinions. Not true. The judge gave no reasons at all. So that's error number two, or it's two errors, I guess, because there are two doctors. Both of them ignored when they say she can't work. Third, the ALJ discredited the plaintiff's own testimony, giving only two reasons. One of them is, I don't find her credible to the extent she says she's more disabled than I am, doesn't line up with the medical evidence of record in general, which again, as this court knows, is not a sufficient reason the judge is required to give. Specific reasons must identify what testimony is not credible, I'm quoting from Dodrell and Redick and Lester and other cases, and what evidence undermines the claimant's complaints. What testimony is not credible? Any testimony that exceeds what I find her limitations to be. That's not a specific identification of the testimony that's not credible. What evidence undermines her testimony? Medical evidence of record. In general. No further specification. So for that third reason, the ALJ's decision here is patently insufficient. I'd like, if I could, to reserve the rest of my time for rebuttal. MS. SHAY, COMMISSIONER OF SOCIAL SECURITY. I have a hearing amplification thing I'm going to try not to use, but please bear with me on the hearing thing. This is a case which is, the ALJ could have done a lot more than he did in his decision. We readily agree that he should have been clearer. But it's one of these cases where there's a real tension between what the AL should have done and what the record demonstrates, and how much the court and the kindergarten officers drawn from the record as a whole. This woman had worked very hard as a legal secretary, which is a hard job. She had done it for a number of years, and had become increasingly stressed. She had a period where she sought mental health counseling in 97 or 96, and in 99 she took off a week of work in April, and then in August she quit the job. Every doctor that she saw, including Dr. Johnson, Dr. Minard, Dr. Coble, even Sally, or I think it's Sally Hingley, at a mental health clinic, all said, she needs to not do that kind of work. She can do any other kind of work that has normal hours and normal expectations. The first three opinions by Dr. Johnson even said this. The other should have added, it deals with normal people. Well, yes. Basically, I don't want to get into another analysis of small law offices, that would be so rude. But I have worked in that environment myself, and I can so relate to this on some level. Our hit, and Judge Brown's analysis of the record was, if you look at the record as a whole, the ALJ's decision is supported. There are far less than magic words here. We readily acknowledge that. But it's a type of thing where there's a difference between post hoc rationalization and pulling the evidence from the record that supports what the ALJ found. Dr. Johnson had several opinions, at least three, that said she can work. Dr. Stallone said she couldn't work. But then when our, the agency doctor called her, called him up later, he said, well, not seeing her that often. I know she's successfully doing temp work. And he did not re-support his strong opinion at that time, which was in November of 2002. He stopped treating her in August of 2003, I believe, July or August. But a year later, still said the same thing he said initially, which was, oh, there's just no way she could work. There are two ways of looking at Dr. Johnson's later opinions and Dr. Stallone's opinions, is to say that you really couldn't do any kind of work at all. In Dr. Johnson's case, that would be a complete contradiction of his earlier opinions with no explanation. In Dr. Stallone's, it would be a contradiction of his own knowledge that she was successfully working part-time work again. Now, the agency didn't stop with trying to contact Dr. Stallone or re-contacting him for his opinion. They also asked the claimant, could we talk to your employers, your part-time employers, your temp agencies? And she says, oh, no, don't do that. So she effectively erected a stone wall right there. We could not find out about her work, couldn't find out about the money or how she was doing. But we gave her the benefit of the doubt, or the Yale J gave her the benefit of the doubt, and looked at the record as a whole. What does this support? Well, now, let me understand this. We are dealing with just a closed period of time. Is that correct? Yes. And that period is what, about a year? It's July, oh, August of 1999 through July of 2003. Over the whole four-year period? Yeah. Okay. Yes, exactly. And the question is, because the testimony, some of the record evidence talks about her  work. Well, there was also the evidence in the middle of the period, she was successfully doing part-time work. Right. I mean, temp work, not part-time. Temp work. Yeah. So the first argument that is made is that the hypothetical did not reflect any mental problems. Well, if you look at, oh, sorry. Yeah. Is that correct, that it did not? Well, that's one way of looking at it. Our way would be that the Yale J said in his decision that he was describing unskilled work as low-stress work, and he had found throughout his analysis of the claimant, his assessment of the B criteria, that she didn't have problems with her activities of daily living, she didn't have problems with her social functioning, she didn't have problems with her concentration, persistence, and pace. The only place that she could have had problems was her deterioration from two high-stress legal environment jobs. Right. So those are high-stress, she could do low-stress. I understand what you're saying, but I'm trying to say what relevance is the fact that the hypothetical to the expert didn't include any of these inability to, any of these that he later found meant that she couldn't work in high-stress environment? Well, our assessment or our take on it would be that his limitation of this person who is obviously highly competent to unskilled work is the same as or a proxy for limiting her to low-stress work. He didn't include low-stress as a mental impairment accommodation per se. Would the expert have understood that? Well, we think he should have understood it, yes. But that's, that obviously is the issue. Is the V.E. reasonably going to get from all this information at the hearing that she was limited to low-stress works because of her mental impairment? And we think that it did reasonably cover that, or that would be our position, and we think that's a rational interpretation of that evidence. Did the Court have anything else you wanted me to address? Okay. Thank you. Just a couple of things. As I'm sure we said in our brief, the district court and this Court are not pulling the evidence. All of these arguments that, yeah, there's some medical evidence over here, or some other thing that the ALJ didn't mention, really are not something that this Court takes cognizance of, so I don't think those are relevant. Quote, pulling the evidence from the record, close quote, is not something that an appellate court does at reviewing an administrative decision. And just on the, because it's been argued, the claimant, of course, was trying to go back to work. She wanted to go back to work. She was motivated to go back to work. She didn't want these guys calling up and talking to her employers. She couldn't stop them. Well, I can understand. Let's just leave that aside. Is it correct that this is really supposed to be an evaluation of her abilities over this whole period? Over the roughly four-year period, 99 to 03. That's correct. Right, because the impression that I get from the record is that the, that her condition improved over that period. That's what all the... It did. Ultimately, it got better. She had her breakdown in 99, and she got better until 03 is when we believe she was able to go back to work. Right. And so, for her to be, ultimately, to say during that period, overall, she was capable of doing low-stress work just doesn't seem to me to be something that is, it seems to be supported by the record. And it doesn't seem to me that the hypothetical has, the actual, that the hypothetical is framing of the word, since it was relating to evidence that was before the expert, has much, is terribly significant here. Well, I mean, this is a prescribed format. That is to say, the ALJ calls an expert who says whether, given these physical and mental characteristics, the person can work. And the ALJ is not a vocational expert. There are many, many, many cases in this circuit holding that. If you don't include all of the claimant's limitations in the hypothetical, then that's not a good answer that the VE gives you. For the ALJ to go back and say, well, come on, if you looked at the rest of the record, actually, of course, anybody knows that. I understand that, but as quoted in your brief, the hypothetical is an individual age 38 with a high school education and experience as testified to by you. The state's disability determination services made the determination the claimant would be able to perform at a light residual functional capacity with a changing tape, light residual functional capacity with sit-stand, and then these are the limitations. Now, then if you take out, then asked if you said no, the answer was the hourly breaks limitation made no jobs available. So then if you take that out, it was not disabled. All right. And then the third hypothetical, which is take her testimony as to her emotional and mental limitations and no jobs there. The problem is this hypothetical in the middle that includes nothing about low stress. She's a highly accomplished person with a high-powered life beforehand. Who says that low stress is OK? Maybe it will drive her nuts. Maybe she'll go there and be making nothing but keystroke entries all day and she won't be able to handle it. The ALJ is not a psychiatrist. It's not a VE. So the system is not set up to ascribe to the ALJ the right to leave things out of vocational expert questions and then go back and in the decision put in stuff that, well, I guess I know that as ALJ or everybody knows or whatever it is. The law is it's got to be in the hypothetical. It wasn't. Thanks very much. Case just argued as submitted for decision.
judges: Schroeder, Pregerson, Strom